# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JOSE ANTONIO GONZALEZ
RIVERA,

        Plaintiff,

        v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO. 3:21-cv-01574

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Jose Antonio Gonzalez Rivera, seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On September 26, 2019, Gonzalez Rivera[1] protectively filed an

---

[1] *See generally Ventura de Paulino v. N.Y. City Dep't of Ed.*, 959 F.3d 519, 524 n.4 (2d Cir. 2020) ("As a general rule, according to Spanish naming conventions, Hispanics typically have two surnames. The first

*(continued on next page)*

application for supplemental security income, asserting a disability onset date of January 19, 2019. His claim was initially denied by state agency reviewers on April 24, 2020, and upon reconsideration on October 22, 2020. The plaintiff then requested an administrative hearing.

A telephone hearing was held on February 16, 2021, before an administrative law judge, Richard E. Guida (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Andrew D. Caporale. The plaintiff was represented by counsel at the hearing.

On April 9, 2021, the ALJ denied Gonzalez Rivera's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Gonzalez Rivera was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Gonzalez Rivera had not engaged in substantial gainful activity since his

last name is the father's family name, and the second last name is the mother's paternal family name. A person may be 'known by merely his father's name, as in English; still in all formal cases,' or where the father's name is common, the mother's name is often used in addition to the father's name.").

date of application. At step two, the ALJ found that Gonzalez Rivera had the severe impairments of: lumbar facet arthropathy, asthma, obesity, and status post-gunshot wounds. The ALJ also recognized that Gonzalez Rivera had a medically determinable impairment of anxiety disorder, but he found that this impairment was nonsevere.

At step three, the ALJ found that Gonzalez Rivera did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Gonzalez Rivera's limitations in four broad functional areas as a result of his non-severe anxiety disorder, finding no limitations in any of the four functional areas—(1) understanding, remembering, or applying information, (2) concentrating, persisting, or maintaining pace, (3) interacting with others, and (4) adapting or managing oneself. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process,

the ALJ assessed Gonzalez Rivera's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Gonzalez Rivera had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[2] with the following limitations:

> [H]e may frequently balance and occasionally crawl and climb ramps, stairs, ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to temperature extremes, humidity, dust, fumes, odors, gases and poor[] ventilation.

(Tr. 92.)

In making these factual findings regarding Gonzalez Rivera's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 416.920c.

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 416.967(b).

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Gonzalez Rivera was unable to perform his past relevant work as a construction worker, as actually and generally performed.

At step five, the ALJ concluded that Gonzalez Rivera was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Gonzalez Rivera was capable of performing the requirements of assembler, electrical accessories I (DOT # 729.687-010), marker (DOT # 209.587-034), and inspector, hand packager (DOT # 559.687-074). Based on this finding, the ALJ concluded that Gonzalez Rivera was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claim by the Appeals Council, but his request was denied on August 18, 2021, making the ALJ's April 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on September 14, 2021. The Commissioner has filed an answer to the complaint,

together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Gonzalez Rivera asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to consider his obesity impairment, as required by Social Security Ruling 19-2p; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of non-examining state agency medical and psychological consultants; (3) the ALJ failed to properly evaluate the opinion of a consultative examining physician, Ahmed Kneifati, M.D.; (4) the ALJ failed to properly consider Gonzalez Rivera's subjective

allegations regarding his symptoms; and (5) the ALJ failed to discuss all relevant medical and non-medical evidence concerning Gonzalez Rivera's symptoms and impairments.[3]

## A. Consideration of Obesity Impairment

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately consider Gonzalez Rivera's obesity, as required by Social Security Ruling 19-2p. The plaintiff, however, does not articulate any specific error by the ALJ, and he does not point to any particular functional limitations that result from his obesity.

In Social Security Ruling 19-2p, the agency recognized that "[p]eople with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than

---

[3] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ's RFC determination failed to include all limitations caused by his severe impairments; (2) the ALJ's RFC determination failed to include all limitations caused by impairments the ALJ found to be non-severe, or never mentioned; and (3) the ALJ's RFC determination was defective because the ALJ failed to afford appropriate weight to medical opinions on which it was based. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

the effects of each of the impairments considered separately." Soc. Sec. Ruling 19-2p, 2019 WL 2374244, at *2. At step two of the five-step sequential evaluation process, the ruling provided that, in evaluating obesity, the agency would "consider all symptoms, such as fatigue or pain that could limit functioning." *Id.* at *3. However, the ruling expressly noted that "[n]o specific weight or BMI establishes obesity as a 'severe' or 'not severe' impairment." *Id.* at *4. At step three of the five-step sequential evaluation process, the ruling noted that "[o]besity is not a listed impairment; however, the functional limitations caused by the [medically determinable impairment] of obesity, alone or in combination with another impairment(s), may medically equal a listing. *Id.* In determining the claimant's RFC before steps four and five, the ruling provided that "[w]e must consider the limiting effects of obesity when assessing a person's RFC. . . . As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations." *Id.*

At step two, the ALJ found Gonzalez Rivera's obesity to be a severe impairment. (Tr. 89.) The plaintiff does not challenge this finding.

At step three, the ALJ expressly considered Gonzalez Rivera's

obesity, stating:

> There is no listing for obesity. The claimant's obesity was not associated with serious complications that would meet or medically equal the requirements of any other affected body system.

(Tr. 91.)

In determining Gonzalez Rivera's RFC between steps three and four, the ALJ expressly considered his obesity, stating:

> The claimant has a history of obesity. Between January 2019 and February 2021, the claimant's weight ranged between 224 pounds and 236 pounds. In February 2021, the claimant's height was 5 feet 9 inches and his weight was 236 pounds. Given the claimant's height and weight, his body mass index was 34.92, which is indicative of obesity. The undersigned has considered the overall impact of the claimant's weight on his other underlying conditions.

(Tr. 95 (citations omitted).)

Based on the foregoing, it is evident that the ALJ did indeed consider Gonzalez Rivera's obesity throughout the five-step sequential evaluation process, consistent with the agency's guidelines, including those set forth in Social Security Ruling 19-2p. While the plaintiff clearly disagrees with the ALJ's conclusions, beyond a generalized and unsupported assertion that his weight might potentially exacerbate his other impairments of asthma, lumbar facet arthropathy, and status post-

gunshot wounds, he has failed to point to *any* evidence demonstrating functional limitations caused by his obesity beyond those found by the ALJ. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[E]ven if we assume . . . that [the claimant's] obesity could be a factor, [the claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand . . . ."); *see also Carter v. Comm'r of Soc. Sec.*, 805 Fed. App'x 140, 143 (3d Cir. 2020) (holding that remand was not required where claimant relied on prior agency policy ruling "stating that obesity *can* impair one's ability to perform basic work activities" but failed to "specify[] *how* her obesity . . . affected her ability to perform basic work activities"); *Woodson v. Comm'r Soc. Sec.*, 661 Fed. App'x 762, 765 (3d Cir. 2016) ("[The claimant] simply speculates about how his obesity might exacerbate other impairments . . . . But [the claimant] never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling."). "The ALJ's failure to explicitly delineate where obesity may have caused or

contributed to specific symptoms and functional limitations does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations." *Dietrich v. Saul*, 501 F. Supp. 3d 283, 294 (M.D. Pa. 2020).

Accordingly, we find the ALJ's evaluation of the claimant's obesity, either alone or in combination with other impairments, throughout the five-step sequential evaluation process, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## B. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by

substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & n.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in September 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case. "The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-

CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more

holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920(c)(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and

supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 416.920c(c)(1) (supportability), and *id.* § 416.920c(c)(2) (consistency), *with id.* § 416.9927c(3) (supportability), and *id.* § 416.927(c)(4) (consistency).[4] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the

---

[4] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. Prior Administrative Findings

The ALJ considered the prior administrative findings in this case finding them to be "persuasive." (Tr. 96–97.)

These prior administrative findings included the opinions of three state agency psychological consultants. The first, Thomas Fink, Ph.D., found the plaintiff had mild limitations in all four of the broad functional areas considered at step two: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[5] The second and third, John Gavazzi, Psy.D., and Molly Cowan, Psy.D., both found the plaintiff had *no* limitations at all in these same four broad areas of mental functioning.[6]

---

[5] Dr Fink's opinion was actually rendered in connection with denial of a prior application for SSI benefits, filed in March 2019 and denied on initial review in August 2019. Rather than requesting reconsideration or an ALJ hearing, the plaintiff appears to have filed a new application in September 2019.

[6] Dr. Gavazzi's opinion was provided in connection with the initial
*(continued on next page)*

In evaluating the opinions of Dr. Fink, Dr. Gavazzi, and Dr. Cowan, the ALJ found that:

> To the extent that the opinions find that the claimant has nonsevere mental health impairments, [they are] supported by and consistent with the medical record of evidence that indicates the claimant was oriented to person, place, and time and was without evidence of mental deficits. It is also consistent with the record that notes the claimant did not allege any mental health symptoms in his disability report and did not receive any inpatient or outpatient treatment to manage any mental health symptoms during the relevant period. Given the lack of treatment and normal mental status examination findings, the undersigned finds that [Dr. Gavazzi's and Dr. Cowan's opinions finding] no limitations in the four areas of mental functioning are slightly more persuasive [than Dr. Fink's opinion finding mild limitations]. Altogether these opinions are persuasive.

(Tr. 96 (citation omitted).)

The prior administrative findings also included the opinions of three state agency medical consultants. The first, John Simmons, M.D., found the claimant capable of performing light work with some postural

---

review and denial of the instant application for SSI benefits, and Dr. Cowan's opinion was provided in connection with the agency's review and denial on reconsideration, prior to the plaintiff's request for an administrative hearing.

and environmental limitations.[7] Based on his review of the claimant's medical records, Dr. Simmons found that Gonzalez Rivera was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Simmons found that Gonzalez Rivera was capable of sitting, standing, or walking up to six hours per 8-hour workday. Dr. Simmons additionally found that Gonzalez Rivera was capable of frequent balancing, stooping, or climbing of ramps or stairs, and occasional kneeling, crouching, or crawling, but no climbing of ladders, ropes, or scaffolds. Dr. Simmons found that Gonzalez Rivera was subject to certain environmental limitations, including avoidance of concentrated exposure to cold, vibrations, fumes, odors, dusts, gases, poorly ventilated areas, or hazards.

The second and third state agency medical consultants, Ruth Arnold, D.O., and Josie Mae Henderson, M.D., found the claimant capable of performing light work as well, but with different postural and environmental limitations than those found by Dr. Simmons.[8] Based on

---

[7] Dr Simmons's opinion was actually rendered in connection with denial of a prior application for SSI benefits. *See supra* note 5.

[8] Dr. Arnold and Dr. Henderson found the same postural and environmental limitations as each other though.

their review of the claimant's medical records, Dr. Arnold and Dr. Henderson found that Gonzalez Rivera was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, and that he was capable of sitting, standing, or walking up to six hours per 8-hour workday. Dr. Arnold and Dr. Henderson additionally found that Gonzalez Rivera was capable of frequent balancing and occasional crawling or climbing of ramps, stairs, ladders, ropes, or scaffolds, with no limitation to his ability to stoop, kneel, or crouch. Dr. Arnold and Dr. Henderson found that Gonzalez Rivera was subject to certain environmental limitations, including avoidance of concentrated exposure to cold, heat, humidity, fumes, odors, dusts, gases, or poorly ventilated areas, but no limitations with respect to vibrations or hazards.

In evaluating the opinions of Dr. Simmons, Dr. Arnold, and Dr. Henderson, the ALJ found that:

> These opinions are supported by and consistent with the record that indicates the claimant maintained normal strength and sensation throughout, despite the presence of his impairments. The opinions are also supported by and consistent with the claimant's activities of daily living, which indicate the claimant is able to care for his personal needs and grooming, shop in stores, and perform housework. These opinions are supported by the recent objective findings upon examination by the pain management provider on

> February 12, 2021. Altogether, the opinions of [Dr.
> Henderson,] Dr. Arnold and Dr. Simmons are
> persuasive.

(Tr. 97 (citations omitted).)

The plaintiff only addresses the evaluation of these particular medical opinions in passing, in the penultimate paragraph of his brief. He appears to object to this evaluation of the state agency medical and psychological consultants' findings and opinions based solely on the fact that they never actually examined Gonzalez Rivera in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical and mental limitations, including the medical opinions of several state agency

medical and psychological consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. Examining Physician Opinions

On July 17, 2019, Gonzalez Rivera was seen and examined by a consultative examining physician, Ahmed Kneifati, M.D., in connection with a prior application for SSI benefits. On examination, Dr. Kneifati observed that Gonzalez Rivera was in no acute distress, with mildly antalgic gait and abnormal stance, unable to stand or walk on heels and toes, 70% squat, but he used no assistive devices to ambulate, was able to rise from a chair without difficultly, and needed no help to get on and off the exam table. On examination Dr. Kneifati found tenderness at L4-L5 of the lumbar spine, but no redness, heat, or effusion, no trigger points, and negative bilateral straight leg raise both seated and supine. He found no scoliosis, kyphosis, or abnormality of the thoracic spine, no evident joint deformity, stable joints, and no trigger points. Dr. Kneifati found hypoesthesia from the ankle down to the toes on the right side to light touch, reflexes were present in both upper and lower extremities, and 5/5 strength in both upper and lower extremities. Dr. Kneifati

observed that hand and finger dexterity were intact and grip strength was 5/5 bilaterally. Dr. Kneifati observed that Gonzalez Rivera presented with normal affect, appropriate dress, good eye contact, and oriented in all spheres, with no evidence of impaired judgment or significant memory impairment. Dr. Kneifati also completed an agency form report on Gonzalez Rivera's ability to do work-related activities. He opined that Gonzalez Rivera was capable of lifting and carrying up to 20 pounds frequently and 50 pounds occasionally. Dr. Kneifati found that Gonzalez Rivera was capable of sitting up to 4 hours in an 8-hour workday, standing up to 3 hours in an 8-hour workday, and walking up to 2 hours in an 8-hour workday. He noted that Gonzalez Rivera did not use a cane to ambulate. He found no limitations in reaching, handling, fingering, feeling, or pushing and pulling with his upper extremities. Dr. Kneifati found that Gonzalez Rivera was limited to no more than occasional (up to 1/3 of the time) use of his right foot and frequent (1/3/ to 2/3 of the time) use of his left foot to operate foot controls. Dr. Kneifati opined that Gonzalez Rivera was limited to only occasional balancing, stooping, kneeling, or climbing of ladders or scaffolds, and no more than frequent crouching, crawling, or climbing of stairs or ramps. Dr. Kneifati found

that Gonzalez Rivera was subject to certain environmental limitations, including no exposure to dust, odors, fumes, and pulmonary irritants, and no more than occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold, or extreme heat. He opined that Gonzalez Rivera was unable to walk a block at a reasonable pace on rough or uneven surfaces.

On March 9, 2020, Gonzalez Rivera was seen and examined by Dr. Kneifati for a second time, in connection with the instant application for SSI benefits. On examination, Dr. Kneifati observed that Gonzalez Rivera was in no acute distress, with normal gait and stance, but squat was limited to 45% to 50%, and Gonzalez Rivera had difficulty standing on toes and heels and was unable to walk on toes and heels. Dr. Kneifati observed that Gonzalez Rivera brought no assistive device to the exam, was able to rise from a chair without difficultly, and needed no help to get on and off the exam table. On examination, Dr. Kneifati found tenderness at L4-L5 of the lumbar spine, but no redness, heat, or effusion, no trigger points, and no scoliosis, kyphosis, or abnormality of the thoracic spine, no evident joint deformity, and stable joints. Straight leg raise was negative bilaterally in the seated position, and negative

with respect to the left leg in the supine position, but positive at 60 degrees with respect to the right leg, accompanied by pain from the lumbar area and down the right leg to the toes. Dr. Kneifati found normal reflexes in upper and lower extremities, no sensory deficits, and 5/5 strength in both upper and lower extremities. Dr. Kneifati observed that hand and finger dexterity were intact. Dr. Kneifati also completed an agency form report on Gonzalez Rivera's ability to do work-related activities. He now opined that Gonzalez Rivera was capable of lifting and carrying up to 10 pounds frequently and 20 pounds occasionally. Dr. Kneifati found that Gonzalez Rivera was capable of sitting up to 4 hours in an 8-hour workday, standing up to 3 hours in an 8-hour workday, and walking up to 2 hours in an 8-hour workday. He noted that Gonzalez Rivera did not use a cane to ambulate. He found no limitations in reaching, handling, fingering, feeling, or pushing and pulling with his upper extremities. Dr. Kneifati found that Gonzalez Rivera was limited to no more than occasional (up to 1/3 of the time) use of his right foot and frequent (1/3/ to 2/3 of the time) use of his left foot to operate foot controls. Dr. Kneifati opined that Gonzalez Rivera was limited to only occasional balancing, stooping, kneeling, crouching, crawling, or climbing of stairs,

ramps, ladders, or scaffolds. Dr. Kneifati found that Gonzalez Rivera was subject to certain environmental limitations, including no exposure to dust, odors, fumes, and pulmonary irritants, and no more than occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold, or extreme heat. He opined that Gonzalez Rivera was unable to walk a block at a reasonable pace on rough or uneven surfaces.

    In evaluating the opinions of Dr. Kneifati, the ALJ found that:

> This opinion is supported by or consistent with the medical evidence of record, which shows that the claimant has a history of physical impairments that cause[] the claimant to experience pain symptoms and a limited range of motion. It is also supported by the record that indicates the claimant maintained normal strength and sensation despite the presence of his impairments. Dr. Kneifati's opinions are persuasive for lift/carry and not persuasive for sit/stand/walk. Dr. Kneifati's sit/stand/walk limitations are not supported by the recent objective findings upon examination by the pain management provider on February 12, 2021. Altogether, Dr. Kneifati's opinions are partially persuasive.

(Tr. 97 (citation omitted).)

    Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to

the persuasiveness of this opinion as well.

The plaintiff appears to argue that, to the extent the ALJ found Dr. Kneifati's opinion to be unsupported by his examination findings or inconsistent with other evidence, he was obligated to recontact Dr. Kneifati for clarification. But the ALJ was under no such obligation. Under the agency's regulations, an ALJ may exercise his or her *discretion* to recontact a medical source if that is the most effective and efficient way to resolve an evidentiary inconsistency or insufficiency that precludes him or her from making a disability determination. *See* 20 C.F.R. § 416.920b((b)(2); *see also Bryson v. Comm'r Soc. Sec.*, 639 Fed. App'x 784, 787 n.8 (3d Cir. 2016) (noting that, although a prior iteration of the regulations required an ALJ to recontact a medical source under certain circumstances, the rule was changed in 2012 to make recontacting a medical source discretionary); *Ross v. Colvin,* Civil No. 1:14-0990, 2015 WL 1636132, at *9 n.4 (M.D. Pa. Apr. 8, 2015). We find no abuse of discretion here as, for the reasons given above, the ALJ had substantial evidence to support a disability determination.

Accordingly, we find the ALJ's evaluation of the opinion of examining physician Dr. Kneifati is supported by substantial evidence

and was reached based upon a correct application of the relevant law.

### C. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of Gonzalez Rivera's symptoms, including statements or testimony by Gonzalez Rivera himself. *See generally* 20 C.F.R. § 416.902(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must

determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at \*3; *see also* 20 C.F.R. § 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at \*4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 93–97.) This included the plaintiff's statements regarding the limiting effects of his symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while

Gonzalez Rivera's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 93.)

Although Gonzalez Rivera quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### D. Discussion of All Relevant Evidence

The plaintiff appears to contend that the ALJ's decision is not supported by substantial evidence because the ALJ failed to explicitly discuss all relevant medical and non-medical evidence concerning Gonzalez Rivera's symptoms and impairments, and he failed to include all of Gonzalez Rivera's claimed limitations or impairments in the hypothetical posed to a vocational expert at the administrative hearing.

It is well settled, however, that an ALJ is not required to discuss every detail of the record evidence cited in his opinion. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008). "A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Philips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) (citation omitted). Additionally, a hypothetical question posed to a vocational expert need only account for credibly established limitations or impairments. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Here, the ALJ explicitly considered and addressed the plaintiff's

severe and medically determinable non-severe impairments, his subjective complaints of pain and other symptoms, and the medical opinions of six state agency medical or psychological consultants and a consultative examining physician. In light of all the evidence, and the ALJ's reasoned consideration of it, we find no error in the ALJ's conclusions with respect to the plaintiff's functional limitations or impairments.

## III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Gonzalez Rivera was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: September 29, 2022          _**s/Joseph F. Saporito, Jr.**_
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge